**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT A. DOMBROSKY,

      Plaintiff,

          v.

RAYMOND BANACH, ROBERT BROWN,
LESTER BUCHANAN, ROBERT
EWBANK, PAUL FISCHER, RICHARD
GASSMAN, JAMES MUIR, ROBERT
STEVENS, CHAD STEWART, EASTERN
PIKE REGIONAL POLICE COMMISSION,
and WESTFALL TOWNSHIP

      Defendants.

CIVIL ACTION NO. 3:09-CV-2579

(JUDGE CAPUTO)

## MEMORANDUM

      This action stems from Plaintiff Robert Dombrosky's former employment as a police officer with the Westfall Township Police Department ("WTPD"). After being charged with a crime, Mr. Dombrosky agreed to take an unpaid leave of absence pending the disposition of the charges. In the meantime, Westfall Township entered into an agreement with Matamoras Borough to merge their respective police departments into a new regionalized police department, to be known as the Eastern Pike Police Department ("EPPD"). Mr. Dombrosky attempted to return to work upon his acquittal, but he was advised that due to the merger, his position no longer existed. Mr. Dombrosky now brings suit against Westfall Township, the Westfall Township supervisors, the Eastern Pike Regional Police Commission, the Eastern Pike Regional Police commissioners, and the chief of police of the EPPD.

Presently before the Court are the four Motions for Summary Judgment by: (1) Mr. Dombrosky; (2) Defendant Raymond Banach, a Westfall supervisor; (3) Defendants Westfall Township and its supervisors Lester Buchanan, Robert Ewbank, Paul Fischer, and James Muir (collectively, the "Westfall Defendants"); and (4) Defendants Eastern Pike Regional Police Commission; its commissioners Robert Brown, Lester Buchanan, Paul Fischer, Richard Gassman, and Robert Stevens; and EPPD Chief of Police Chad Stewart (collectively, the "Eastern Pike Defendants").[1] Mr. Dombrosky has established as a matter of law that Westfall Township and its supervisors are liable for his Police Tenure Act and breach of contract claims, but there are genuine issue of material fact as to whether Mr. Dombrosky had a property interest in his employment with the WTPD. Therefore, Mr. Dombrosky's motion will be granted in part and denied in part, and the Westfall Defendants' and Mr. Banach's motions will be denied. But because Mr. Dombrosky has not established a basis for imposing liability upon the Eastern Pike Defendants, their motion will be granted and Mr. Dombrosky's will be denied in part.

## I. Background

### A. Factual History

#### 1. Plaintiff's Employment with the Westfall Township Police Department

Westfall Township is a township of the second class located in Pike County, Pennsylvania. (Pl.'s Stmt. of Material Facts ("SMF") ¶ 1).

The WTPD hired Mr. Dombrosky on September 30, 1998. (*Id.* ¶ 1). He worked first as a part-time police officer, but eventually became a full-time patrolman in February of

---

[1] Several individual Defendants are sued in their capacities both as Westfall supervisors and Eastern Pike Regional Police commissioners.

1999. (*Id.* ¶ 4). He was promoted to the rank of corporal in 2003 and then promoted to the rank of sergeant in 2005. (*Id.* ¶ 4). During his employment with the WTPD, Mr. Dombrosky was disciplined on several occasions, including but not limited to the following instances: on February 14, 2000, he received a written reprimand for failing to attend a preliminary hearing; on March 16, 2001, he was reprimanded and suspended based on his involvement in an altercation while he was intoxicated; and on February 8, 2007, he received a supervisor's notation based on another altercation involving alcohol. (Def. Banach's Ex. B).

On July 16, 2007, Mr. Dombrosky was charged with harassment and attempted assault in Port Jervis, New York. (Pl.'s SMF ¶ 13; Eastern Pike Defs.' Ex. 31). The criminal charges alleged that he was involved in an altercation at a bar while intoxicated. (Def. Banach's Ex. E). Mr. Dombrosky pleaded not guilty to the charges. (Westfall Defs.' Ex. E at 102:1-6).

The Westfall Township Board of Supervisors held an executive meeting with Mr. Dombrosky on September 6, 2007, to determine Mr. Dombrosky's employment status while he awaited  hearing on the Port Jervis charges. (Pl.'s SMF ¶¶ 15-16; Def. Banach's SMF ¶ 12). The Supervisors at that time were Defendants Lester Buchanan, Robert Brown, Robert Ewbank, Paul Fischer, and James Muir. (Def. Banach's SMF ¶ 13). At the meeting, Mr. Dombrosky and the Supervisors agreed that Mr. Dombrosky would take an unpaid leave of absence pending resolution of the charges; if Mr. Dombrosky was not convicted, he would be returned to active duty with backpay. (Eastern Pike Defs.' SMF ¶ 34). During his unpaid leave of absence, Mr. Dombrosky continued to receive all of his benefits, including health and other insurances. (Pl.'s SMF ¶ 19).

3

### 2. Regionalization

While an employee of the WTPD, Mr. Dombrosky attended several meetings about a potential merger between the Westfall Township and Matamoras Borough Police Departments. (Eastern Pike Defs.' SMF ¶ 67). One such meeting occurred on March 19, 2007. (Def. Banach's Ex. L). Mr. Dombrosky testified that at the March 19, 2007 meeting, officers were told that current WTPD officers would be guaranteed jobs after any merger of the two municipalities. (Pl.'s SMF ¶ 9). Mark Moglia, the former chief of police for the WTPD, also testified that, based on his discussions with the Westfall Supervisors, he believed that all WTPD officers would keep their jobs. (*Id.* ¶ 10). Mr. Dombrosky was sworn in as a Matamoras Borough police officer. (*Id.* ¶ 11).

On October 4, 2007, Westfall Township and Matamoras Borough entered into a Regionalization Agreement whereby "[a]ll mutual municipal boundaries of the participating political subdivisions" were "obliterated for the purpose of police service, so that a single police district comprising the total geographic area of the Borough of Matamoras and the Township of Westfall was established." (Westfall Defs.' Ex. N at 1, 3). Under the Agreement, all costs for the new regional police department are shared between Westfall Township and Matamoras Borough. (*Id.* at 6). Each municipality is also responsible for its pro rata share of the employer cost of the police pension fund. (*Id.* at 10). The Agreement stated that its effective date was January 1, 2008 at 12:01 p.m. (*Id.* at 3), but the date was modified so that it became effective on January 7, 2008 at 12:01 a.m. (Eastern Pike Defs.' SMF ¶ 41).

The Agreement also created a joint commission, Defendant Eastern Pike Regional Police Commission, to exercise general supervision over the newly created EPPD. (Westfall

4

Defs.' Ex. N at 3). The Commission consists of two representatives from each municipality, plus one additional member. (*Id.* at 3-4). The members of the Commission are Defendants Richard Gassman, Robert Stevens, Paul Fischer, Robert Brown, and Ralph Burger. (Pl.'s Ex. 6). One of the Commission's duties is to prepare an annual budget that is submitted to Westfall Township and Matamoras Borough for approval. (Westfall Defs.' Ex. N at 7). The Commission also has the power to "hire, fire, suspend, promote, demote, discipline, set salaries, and otherwise deal with employees." (*Id.* at 9). The Commission obtained its own bank account, tax identification number, insurance, and developed standard operating procedures. (Eastern Pike Defs.' SMF ¶ 48, 52). In November 2007, the Commission appointed Defendant Chad Stewart as the new Chief of Police for the EPPD. (*Id.*¶ 51). It also set up a new phone system and ordered guns, badges, and uniforms for the EPPD. (*Id.* ¶ 55).

In terms of the existing employees of the WTPD and Matamoras Police Department, Westfall Township and Matamoras Borough agreed to "take all steps necessary to effectuate the transfer of police officers from their respective municipal departments to the regional departments at salaries, wages, benefits, ranks and positions and seniority levels as agreed upon by the municipalities." (Westfall Defs.' Ex. N at 11). The Agreement stated that at the commencement of the regional police department, a new consolidated bargaining unit would be created, consisting of "[a]ll full time police officers employed by Matamoras Borough and Westfall Township." (*Id.* at 11). The Agreement also stipulated:

> In the event the respective police departments of Matamoras Borough and Westfall Township oppose the regionalization of police services and do not execute the consolidated regional police contract, Matamoras Borough and Westfall township shall proceed with the commencement of the department by assigning their respective police officers to perform police services under the

direction and control of the Commission while remaining employees of their respective borough or township.

(*Id.* at 11). The Commission meeting minutes from December 17, 2007, state that the commission's solicitor had spoken to the representative for the collective bargaining agreement and offered him a copy of the collective bargaining agreement for review. (Eastern Pike Defs.' SMF ¶ 62).

The Agreement listed various reasons that the municipalities sought to create a regional police department, including "an urgent need for uniformity and continuity in the enforcement of the Laws," and increased ability "to observe and protect the public safety." (Westfall Defs.' Ex. N at 2). Mr. Brown and Mr. Ewbank testified that potential cost savings was the general motivation behind the regionalization (Eastern Pike Defs.' SMF ¶ 40), though Mr. Dombrosky disputes this, pointing out that the Township spent more on police services for Eastern Pike than it did on WTPD (Pl.'s Ex. 71).

The employees of the WTPD and the Matamoras Borough Police Department were not asked to consent to the regionalization, nor were they given a vote. (Pl.'s SMF ¶ 25). The consolidated regional police collective bargaining agreement was signed by the Commission's solicitor on January 8, 2009. (*Id.* ¶ 47). The parties agreed that the collective bargaining agreement was to be effective retroactively to January 1, 2008. (*Id.* ¶ 47).

### 3. Plaintiff's Termination

Before the EPPD began operation, Mr. Stewart put together a list of active officers with the WTPD that would be transferred to the EPPD. (Eastern Pike Defs.' Ex. 36, 60:9-61:8). Because there had not yet been a positive resolution to Mr. Dombrosky's criminal charges, Mr. Stewart did not include him on the list. (*Id.* at 60:9-61:14).

After six adjournments, Mr. Dombrosky had a hearing on his criminal charges on February 19, 2008. (Westfall Defs.' SMF ¶ 31; Eastern Pike Defs.' Ex. 31). The Port Jervis judge dismissed the attempted assault charge and then acquitted Mr. Dombrosky of the harassment charge after a bench trial. (Eastern Pike Defs.' Ex. 31).

Mr. Dombrosky first contacted Mr. Stewart to notify him about the disposition of his charges. (Eastern Pike Defs.' Ex. 3, 134:19-21). Mr. Stewart advised Mr. Dombrosky that he would notify the Commission and the Board of Supervisors' secretary, Lisa Green. (*Id.* at 135:1). He also stated that the Commission was going to schedule a meeting at the end of February regarding Mr. Dombrosky's reinstatement. (*Id.* at 135:8-24). Mr. Dombrosky subsequently sent a letter to the Westfall Supervisors requesting reinstatement to the police department and back pay for the time he had been on leave. (Eastern Pike Defs.' SMF ¶ 74). By that time, Defendant Raymond Banach had been elected to the Board of Supervisors, replacing Mr. Brown. (Def. Banach's SMF ¶ 15; Eastern Pike Defs.' Ex. 32, 13:21-14:9).

On February 21, 2008, Ms. Green sent Mr. Dombrosky a letter stating that his benefits would be terminated because his "employment status with the Westfall Township Police Department ended as of 12:01 am on January 7, 2008 when the department merged to form the Eastern Pike Regional Police Department." (Eastern Pike Defs.' Ex. 4). The Commission's Solicitor sent Mr. Dombrosky a letter on March 26, 2008, stating that at a January 24, 2008 meeting, the Commission voted to notify Mr. Dombrosky that there was no full-time police officer position available with the EPPD. (Eastern Pike Defs.' Ex. 33). The letter advised Mr. Dombrosky that he could file an application with the EPPD and it would be kept on file in case a position opened. (*Id.*).

With the exception of Mr. Dombrosky, every WTPD police officer at the time of

regionalization became a police officer with the EPPD. (Pl.'s SMF ¶ 28). At the time of the regionalization, there were six members of the Westfall Township Police Department. (Pl.'s Answer to Eastern Pike Defs.' SMF ¶ 42).

After filing for bankruptcy on April 10, 2009, Westfall Township paid Mr. Dombrosky his backpay and interest on April 27, 2010**.** (Pl.'s SMF ¶¶ 49, 60).

## B. Procedural History

Mr. Dombrosky filed his complaint in the Middle District of Pennsylvania on December 31, 2009. He amended his complaint on May 24, 2010. The amended complaint asserts four causes of action: Count One asserts a Fourteenth Amendment Due Process claim against all Defendants pursuant to 42 U.S.C. § 1983; Count Two alleges a violation of the Police Tenure Act by all Defendants; Count Three asserts a breach of contract claim against all Defendants except Mr. Banach; and Count Four alleges a violation of the Contract Clause of the United States Constitution by the Westfall Defendants pursuant to 42 U.S.C. § 1983. The Westfall Defendants filed a counterclaim for contribution and/or indemnity against the Commission; the Eastern Pike Defendants filed a counterclaim for contribution and/or indemnity against Westfall Township.

Mr. Dombrosky first filed a motion for summary judgment on July 15, 2011; it was dismissed as premature because discovery had not yet concluded. Then on January 20, 2012, Mr. Banach filed his motion for summary judgment. The Westfall Defendants filed their motion for summary judgment on February 8, 2012. And on February 10, 2012, both Mr. Dombrosky and the Eastern Pike Defendants filed motions for summary judgment. All Defendants seek summary judgment as to all claims; Mr. Dombrosky seeks summary judgment as to liability on Counts One, Two, and Three. The motions have each been fully

briefed and all are ripe for disposition.

## II. Legal Principles

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Id.* at 256–57.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the judge's function is not to make credibility

9

determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at

249.  Rather, the judge must simply "determine whether there is a genuine issue for trial."

*Id.*

## B. Section 1983

Mr. Dombrosky brings his Due Process Clause claim pursuant to 42 U.S.C. § 1983,

which states,"Every person who, under color of any statute, ordinance, regulation, custom,

or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights,

but a method for vindicating federal rights elsewhere conferred by those parts of the United

States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte

Dunes*, 526 U.S. 687, 749 n.9 (1999)  (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3

(1979)). A municipality or other local government may be subject to liability under § 1983.

*Monell v. New York City Department of Social Services*, 436 U.S. 658, 692 (1978). To prevail

in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by

the Constitution or laws of the United States; and (2) that the alleged deprivation was

committed by a person acting under color of state law.  *Nicini v. Morra*, 212 F.3d 798, 806

(3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

## C. Due Process Claim

Mr. Dombrosky asserts that the Defendants deprived him of a property interest in

violation of his Fourteenth Amendment right to procedural due process. The Fourteenth

Amendment provides that a state may not "deprive any person of life, liberty, or property,

without due process of law."  U.S. Const. amend. XIV, § 1. Courts apply a two-step test to

10

determine whether a party's due process rights were violated by a deprivation of property, examining: "(1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute 'due process of law.'" *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003)) (internal quotations omitted). Generally, "a deprivation of life, liberty or property [must] 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Schmidt*, 639 F.3d at 595-96 (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009)). Only in "extraordinary situations where some valid government interest is at stake" is it permissible to postpone the hearing until after the deprivation has already occurred. *Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972)).

## D. Breach of Contract

Mr. Dombrosky also claims that all Defendants except Mr. Banach breached their contract with him. Under Pennsylvania law, a plaintiff must prove three elements to succeed on a breach of contract claim: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). "When performance of a duty under a contract is due, any nonperformance is a breach." *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. Ct. 2003) (citing Restatement (Second) of Contracts § 235(2) (1981)). In a contract action, the party asserting the breach has the burden of proving it by a preponderance of the evidence. *Snyder v. Gravell*, 666 A.2d 341, 343 (Pa. Super. Ct. 1995); *E. Tex. Motor Freight, Diamond Div. v. Lloyd*, 484 A.2d 797, 801 (Pa. Super. Ct. 1984).

"When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning." *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (Pa. 2012). Where contract terms are ambiguous, however, "the court is free to receive extrinsic evidence, i.e. parol evidence." *Bohler-Uddeholm Amer., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (quoting *Krizovensky v. Krozovensky*, 624 A.2d 638, 642 (Pa. 1993)). "The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). A court may find a contract ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Id.* (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)). But "a court must not rely upon a strained contrivancy" to establish ambiguity, as "scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity." *Id.* (quoting *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)). And "a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." *Id.* (quoting *Duquesne*, 66 F.3d at 614).

### III. Discussion

## A. Qualified Immunity

Defendants' motions for summary judgment will be denied as to the issue of qualified immunity. All Defendants assert that they are protected by qualified immunity. However, the

issue of qualified immunity in this case has already been decided. In the order denying Defendants' motions to dismiss, I determined that the Defendants were not entitled to qualified immunity. *Dombrosky v. Banach*, No. 09-2579, 2010 WL 3749267, at *3 (M.D. Pa. Sept. 21, 2010). Thus, summary judgment is not appropriate on these grounds.

## B. Liability

All Defendants assert that even if Mr. Dombrosky suffered constitutional or contractual injuries, they are not the appropriate party to hold liable. Thus, before discussing the individual causes of action, the larger issue of liability in this case must be addressed.

### 1. Westfall Defendants

The Westfall Defendants argue that they cannot be held liable because their obligations to Mr. Dombrosky ceased when the regionalization occurred. They claim that after the regionalization, Westfall Township no longer employed Mr. Dombrosky. And even if Westfall did technically employ him, the supervisors had (and continue to have) no ability to satisfy any of Mr. Dombrosky's alleged constitutional or contractual rights. They cannot place him into his old position with the WTPD because it no longer exists, and they cannot place him with the EPPD because they do not have hiring power for that organization.

However, the Regionalization Agreement demonstrates that the Westfall Defendants should be held liable if Mr. Dombrosky can successfully prove his claims. In particular, under the terms of the Regionalization Agreement, Mr. Dombrosky was still a Westfall Township employee at the time his criminal charges were resolved. The Agreement stipulates that "[i]n the event the respective police departments of Matamoras Borough and Westfall Township oppose the regionalization of police services and do not execute the consolidated regional police contract," the regionalization would proceed with all police personnel "remaining

13

employees of their respective borough or township." Based on the plain meaning of this language, all WTPD officers remained employees of Westfall Township until the consolidated regional police contract was signed on January 8, 2009.

The Westfall Defendants dispute this interpretation of the Agreement, but their reading of the contract is strained. They claim that the use of the conjunctive word "and" in the clause suggests that the police officers would only remain employees if two conditions were met: (1) opposition to the regionalization by the respective police departments *and* (2) a failure to execute the contract. But a natural reading of the contractual language indicates that the clause does not consist of two phrases that are each separate conditions; rather, the clause contains two phrases that together describe one condition. As an example, consider the statement, "If the babysitter gets tired and goes to bed, the children can stay up and watch television." A natural reading of this statement would be that the children can watch television if the babysitter goes to bed; there is no need to separately ensure that the babysitter was tired because that fact is indicated by her going to bed. Here, the Agreement expresses one condition: a failure to execute the contract. The opposition, like the babysitter's tiredness, is a lesser-included element of the triggering condition; the existence of opposition is indicated by the failure to execute the contract. Thus, the unambiguous language of the agreement demonstrates that Mr. Dombrosky was still employed by Westfall Township until February 21, 2008, when he received a termination letter from the Supervisors' secretary. Therefore, the Westfall Defendants' motion for summary judgment on the basis of a lack of liability must be denied.

The Westfall Defendants also fail to prove that summary judgment is necessary based on their inability to provide an adequate remedy. They argue that they cannot provide the

remedy of reinstatement because the Commission, not the Board of Supervisors, has control over EPPD's personnel decisions. Mr. Dombrosky, however, argues that the Westfall Defendants have significant control over the Commission, noting that Westfall funds 50% of the EPPD. Based on this dispute, it appears there is a genuine issue of material fact as to whether the Westfall Defendants could provide the remedy of reinstatement. But regardless of whether the Westfall Defendants could reinstate Mr. Dombrosky, there is no doubt that they could provide monetary damages. Thus, they cannot be granted summary judgment on the basis of a lack of adequate remedy.

### 2. Raymond Banach

Similarly, Mr. Banach may be held liable for Mr. Dombrosky's injuries. Mr. Banach argues that he is not liable because he did not join the Westfall Board of Supervisors until after the regionalization, meaning he was not a party to the original agreement with Mr. Dombrosky. He claims that Mr. Dombrosky has failed to provide any evidence that he committed any act or omission that would affect Mr. Dombrosky's rights. However, the evidence shows that Mr. Banach was a member of the Board of Supervisors in February 2008 when it made the determination, after a meeting, to notify Mr. Dombrosky that he was terminated. And per the Regionalization Agreement, Mr. Dombrosky was an employee of Westfall Township up until that point. Mr. Banach's position on the Board during Mr. Dombrosky's employment and subsequent termination sufficiently establishes his potential liability for any violations of due process or the Police Tenure Act.[2] As to potential remedies, the discussion above regarding the remainder of the Westfall Defendants is equally

---

[2] Mr. Dombrosky does not assert either of his contract-based claims against Mr. Dombrosky.

15

applicable to Mr. Banach. Thus, Mr. Banach's motion for summary judgment on the grounds that he cannot be held liable will be denied.

### 3. Eastern Pike Defendants

Mr. Dombrosky has failed, however, to establish a basis for imposing liability on the Eastern Pike Defendants. Neither the EPPD nor the Commission was a party to the agreement that Mr. Dombrosky would be reinstated upon an acquittal of his criminal charges, and neither the EPPD nor the Commission has ever employed Mr. Dombrosky. Mr. Dombrosky's argument is based on the theory that successor municipal corporations are subject to the existing legal obligations of the preceding municipal corporation, citing *Shapleigh v. San Angelo*, 167 U.S. 646, 654 (1897). But *Shapleigh* does not apply here because it addresses successor liability for municipalities–and the EPPD and the Commission are not municipalities, but rather are branches of the municipalities of Westfall Township and Matamoras Borough. The Pennsylvania laws regarding successor liability for municipalities substantiate the point. Pennsylvania law dictates that when two municipalities consolidate or merge, "[d]ebts, liabilities and duties of each of the municipalities shall be attached to the consolidated or merged municipality and may be enforced against it." 53 Pa. Cons. Stat. Ann. § 740. But that statute clearly defines a municipality as "[e]very county other than a county of the first class, every city other than a city of the first or second class, and every borough, incorporated town, township and home rule municipality other than a home rule municipality which would otherwise be a city of the first or second class." *Id.* § 732. The EPPD and the Commission are a police department and commission, respectively. They are not counties, cities, boroughs, incorporated towns, townships, or home rule municipalities.

Mr. Dombrosky fails to cite any precedent suggesting that the successor liability rules for municipalities also apply to agencies within a municipality. The case cited by Mr. Dombrosky, *Cherry Hill Fire Co. No. 1 v. Cherry Hill Fire District No. 3*, is distinguishable because it involved two fire districts that were public corporations formed pursuant to the New Jersey public corporations statute. 646 A.2d 1150, 1151-52 (N.J. Ch. Div. 1994). As Mr. Dombrosky himself asserted in his briefs, neither the EPPD nor the Commission are corporations. Thus, because Mr. Dombrosky has failed to prove as a matter of law that the Eastern Pike Defendants can be held liable for his claims, the Eastern Pike Defendants' motion for summary judgment on all counts will be granted.

## C. Police Tenure Act & Due Process Violations

Having determined that the Westfall Defendants and Mr. Banach may be held liable, the substance of Mr. Dombrosky's Police Tenure Act and Due Process claims must be addressed. Mr. Dombrosky seeks summary judgment against the Westfall Defendants and Mr. Banach on the grounds that his termination was unlawful. The Westfall Defendants and Mr. Banach also seek summary judgment on these claims, arguing that the Police Tenure Act does not apply and that even if it did, Mr. Dombrosky failed to request a hearing from the Township. Further, they represent that an employee cannot have a property interest in a position that is abolished during a governmental reorganization.

### 1. Police Tenure Act

The Police Tenure Act, 53 Pa. Cons. Stat. Ann. §§ 811 *et seq.*, is a statute addressing removals, suspensions, and rank reductions of Pennsylvania municipal police officers. The Act states in relevant part that:

No person employed as a regular full time police officer in any police

17

department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service . . . (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty.

*Id.* § 812. Based on this language, federal district courts in Pennsylvania have recognized that the Police Tenure Act creates a constitutionally protected property interest in an individual's employment as a police officer. *See, e.g.*, *Morgan v. Covington Twp.*, No. 3:07-CV-1972, 2009 WL 585480, at *5 (Mar. 6, 2009); *Bartal v. Borough of Laureldale*, 515 F. Supp. 2d 556, 561 (E.D. Pa. 2007)).

The Westfall Defendants and Mr. Banach argue that the Police Tenure Act does not apply here, but this is a misinterpretation of the statutory language. The Act applies "to each township of the second class, to each borough and township of the first class having a police force of less than three members and not subject to . . . 'The Borough Code' . . . nor to . . . 'The First Class Township Code.'[3] 53 Pa. Cons. Stat. Ann. § 811. The Westfall Defendants seem to believe that the requirement of "a police force of less than three members" applies to "each township of the second class." It argues thus that the Act does not apply to Westfall, because it is a second class township whose police force consisted of more than three members. But the structure of the § 811 language—with its comma separating second class

---

[3] The Pennsylvania Borough Code, 53 Pa. Cons. Stat. Ann. §§ 46171 *et seq.*, is a statute governing boroughs. The First Class Township Code, 53 Pa. Cons. Stat. Ann. § 55101 *et seq.*, governs first class townships. None of the parties asserts that the Borough Code or the First Class Township Code is applicable here, as Westfall is a second class township.

townships from boroughs and first class townships--indicates instead that the "less than three" clause modifies only "each borough and township of the first class." The statutory context also makes this apparent: as noted above, the Act dictates regulations regarding the termination of persons employed "as a regular full time police officer in any police department of *any township of the second class*, or any borough or township of the first class *within the scope of this act*."*Id.* § 812 (emphasis added). That sentence again distinguishes between townships of the second class (which are all covered under the Act) and boroughs or townships of the first class (which must meet the two requirements laid out in § 811: less than three members and no simultaneous coverage under the Borough Code or First Class Township Code). The Police Tenure Act's applicability to all second class townships is even explicitly stated in the Second Class Township Code's provisions for removal of police officers, which notes that full-time police officers may only be removed pursuant to the Police Tenure Act. *See id.* § 66912. Thus, based on a plain language reading and statutory context, the Police Tenure Act applies to Westfall Township.

Because Westfall Township violated the Police Tenure Act when it terminated Mr. Dombrosky, Mr. Dombrosky's motion for summary judgment on liability against the Westfall Defendants and Mr. Banach will be granted. As noted above, the Act provides that full-time police officers may only be removed for specific reasons. *Id.* § 812. A regionalization agreement between police officers is not among the specified permissible reasons. *See id.* Therefore, Westfall Township dismissed Mr. Dombrosky in violation of the Police Tenure Act. The Westfall Defendants and Mr. Banach argue that Mr. Dombrosky's claim must fail because he neglected to request a hearing pursuant to the Act. But the Act's hearing provision is optional, not mandatory: the Act notes, "*If* the person sought to be suspended

or removed shall demand a public hearing, the demand shall be made to the appointing authority." *Id.* § 814 (emphasis added). It does not state that a person sought to be suspended or removed *must* demand a hearing. *See id.* Further, the statute refers to "the person *sought to be* suspended," *id.*, which suggests that a hearing is an option for employees who have received notice that their employer seeks to terminate them. Westfall Township, however, did not provide Mr. Dombrosky with any notice that it planned to terminate him, and thus he had no opportunity to request a hearing to challenge the potential dismissal. For this reason, Mr. Dombrosky did not waive his right to challenge his unlawful termination by failing to request a hearing, and the Westfall Defendants and Mr. Banach are liable under the Police Tenure Act.

### 2. Due Process

Additionally, Mr. Dombrosky, the Westfall Defendants, and Mr. Banach all seek summary judgment as to Mr. Dombrosky's Due Process Clause claim. As noted above, a plaintiff asserting a Due Process Clause violation must demonstrate both a protected property interest and inadequate procedure. *Schmidt*, 639 F.3d at 595. Courts look to state law when determining whether a party had a property interest in employment. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Neither party disputes that police officers in Pennsylvania have a protected property interest in their employment based on the statutory provisions of the Police Tenure Act. *See, e.g.*, *Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989).

The Defendants argue, however, that Mr. Dombrosky did not have a property interest

in his employment with the WTPD because his job was abolished during the regionalization.[4] Pennsylvania courts have recognized a "reorganization exception" whereby a public employee's substantive property right to his employment is circumscribed where a government abolishes a department or position or reduces its workforce for economic reasons. *See, e.g.*, *Twp. of Perkiomen v. Mest*, 522 A.2d 516, 519-20 (Pa. 1987); *Kusza v. Maximonis*, 70 A.2d 329, 331 (Pa. 1950); *In re Ordinance No. 384 of Borough of Dale, Cambria Cnty.*, 382 A.2d 145, 147-48 (Pa. Cmmw. Ct. 1978); *see also Kakavich v. Bentleyville Borough*, No. 06-1114, 2008 WL 2563377, at *3-4 (W.D. Pa. Jun. 24, 2008)*; Baker v. Borough of Port Royal, Pa.*, No. 1:06-CV-0932, 2007 WL 1576439, at *6-7 (M.D. Pa. May 30, 2007); *McNeil v. Pittsburgh*, No. 94-1276, 1997 U.S. Dist. Lexis 2034, at *12-20 (W.D. Pa. Feb. 5, 1997). The exception recognizes that "in respect to employment decisions of the administrative type, wide discretion is essential to the effective implementation of important government policies." *Kakavich*, 2008 WL 2563377, at *3 (quoting *Hartman v. Providence*, 636 F. Supp. 1395, 1410 (D.R.I. 1986)).

There are, however, limitations to the government reorganization exception. The exception does not apply where an employee can show that the municipality's actions were "a mere pretense or subterfuge." *Id.* (citing *Perkiomen*, 522 A.2d at 520). To establish pretense for the purposes of defeating a government's reorganization exception defense, a plaintiff must show that (1) the position or department was eliminated in order to evade a court order; or (2) the eliminated position or department was recreated under a different

---

[4]  They also argue that Mr. Dombrosky waived his right to make a Due Process Challenge by failing to request a hearing under the Act, but that argument is without merit, as is noted above.

name or title. *Id.* (citing *Perkiomen*, 522 A.2d at 520).

Here, summary judgment is inappropriate because there is a genuine issue of material fact as to whether Westfall Township acted under pretense when it terminated Mr. Dombrosky. Although the evidence indicates that the reorganization itself was not undertaken as pretense, a reasonable jury could find that Westfall used the reorganization as subterfuge for its desire to unlawfully terminate Mr. Dombrosky. There is evidence that Westfall transferred every WTPD officer besides Mr. Dombrosky and that it had a potential motive to terminate Mr. Dombrosky based on his disciplinary record. This creates a genuine issue of material fact as to whether the establishment of the EPPD was essentially a recreation of the WTPD and its police officer positions. Based on this, summary judgment on the Due Process Clause claim must be denied to Mr. Dombrosky, the Westfall Defendants, and Mr. Banach.

If a jury were to determine that the reorganization exception did not apply because Westfall acted under pretense, Mr. Dombrosky would succeed in his due process claim. The Supreme Court and the Third Circuit have repeatedly ruled that "due process requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *McDaniels v. Flick*, 59 F.3d 446, 454 (3d Cir. 1995) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) (internal quotations omitted). An "essential component of due process" is a "pretermination opportunity to respond." *Id.* (citing *Roth*, 408 U.S. at 569-70). Thus, Mr. Dombrosky was entitled to notice and an opportunity to respond before he was terminated; he received neither. If the reorganization exception does not apply, Mr. Dombrosky will have proven that the Westfall Defendants and Mr. Banach violated his due process rights.

**D. Breach of Contract**

Summary judgment will be granted to Mr. Dombrosky on the issue of the Westfall Defendant's liability for breach of contract. Mr. Dombrosky and the Westfall Defendants entered into a contract. "A contract is formed when the parties to it (1) reach a mutual understanding, (2) exchange consideration, and (3) delineate the terms of their bargain with sufficient clarity." *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003). It is undisputed that the Westfall Defendants agreed to reinstate Mr. Dombrosky if he was acquitted of his criminal charges. The Westfall Defendants argue that this did not constitute a contract because Mr. Dombrosky did not provide consideration. "Consideration consists of a benefit to the promisor or a detriment to the promisee." *Id.* at 1172. Here, as he points out, Mr. Dombrosky provided consideration by agreeing to take an unpaid suspension without exercising his right under the Police Tenure Act to have a hearing, *see* 53 Pa. Cons. Stat. Ann. §§ 814. Thus, the agreement between Mr. Dombrosky and the Westfall Defendants was an enforceable contract. The Westfall Defendants breached this agreement by failing to perform their contractual duty to rehire Mr. Dombrosky upon his acquittal.

The Westfall Defendants attempt to argue that their performance was frustrated by the long delay in the disposition of Mr. Dombrosky's charges, but they cannot raise this issue for the first time at summary judgment. Frustration of purpose is an affirmative defense to a breach of contract claim. *See, e.g.*, *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004). "Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991); *see also* Fed. R. Civ. P. 8(c). There is an exception,

however, where the defense is raised "at a pragmatically sufficient time" and the plaintiff's "ability to respond" is not prejudiced. *Id.* at 864. The Westfall Defendants point out that in *G.R. Sponaugle & Sons, Inc. v. Hunt Construction Group, Inc.*, 366 F. Supp. 2d 236, 242 (M.D. Pa. 2004), the Middle District of Pennsylvania found that an affirmative defense first raised in a motion for summary judgment was raised at a pragmatically sufficient time. But *G.R. Sponaugle* is distinguishable because in that case, the Plaintiff did not claim any prejudice. *See id.* Further, that decision was based on the fact that the relevant affirmative defense presented only a question of law. *See id.* Here, on the other hand, Mr. Dombrosky argues that he is prejudiced by the late raising of the frustration defense. And the defense at issue here, frustration, involves factual considerations such as the foreseeability of the delay. *See* Restatement (Second) of the Law of Contracts § 265 cmt. a (1981) ("The foreseeability of the event is . . . a factor in th[e] determination."). Thus, the Westfall Defendants did not raise the defense in a pragmatically sufficient time to avoid prejudice to Mr. Dombrosky.

But even if the defense had been timely raised, it is unlikely that it would be of assistance to the Westfall Defendants. Under the frustration of purpose defense, "the frustration must be so severe that it is not fairly to be regarded as within the risks . . . assumed under the contract." *Id.* The five-month wait between the agreement and the disposition of Mr. Dombrosky's charges does not rise to the level of substantial frustration that is required to successfully utilize the defense. *Cf. Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 103 (3d Cir. 1986) (affirming application of frustration defense where defendant delayed consummation of agreement for four years). Thus, because the undisputed facts demonstrate that the Westfall Defendants breached their agreement with

Mr. Dombrosky, Mr. Dombrosky's motion for summary judgment will be granted.

### IV. Conclusion

For the reasons explained above, Mr. Dombrosky's motion for summary judgment will be granted in part and denied in part, Mr. Banach's motion will be denied, the Westfall Defendants' motion will be denied, and the Eastern Pike Defendants' motion will be granted. An appropriate order follows.


 May 24, 2012                                              /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                           United States District Judge